# CHESAPEAKE IRON WORKS OF BALTIMORE CITY *vs.* HOCHSCHIELD, KOHN & COMPANY.

*Negligence : damages; insurance collected by the plaintiff; when negligence by plaintiff does not excuse defendant's negligence; contractors and builders; hoisting iron columns. Prayers : on theory of which there is no evidence.*

In a suit for damages as the result of an accident due to the negligence of the defendant, the fact of insurance can not be set up in mitigation of damages, and it is no defense that the injured party has been indemnified by such insurance, although he may have collected all or part of it. pp. 307-308

The defendant was engaged in erecting structural iron work for an addition to the plaintiff's store; the derrick and other appliances used in the work were under the management and control of the defendant and its servants; while the defendant's servants were engaged in hoisting a heavy iron joist it struck against and broke the automatic sprinkler apparatus of the store, to the great injury of the goods there contained. It was *held,* that the accident was such as in the ordinary course of things would not and should not happen if those in charge of the work used proper care, and that the happening of the accident in the manner and under the circumstances disclosed by the plaintiff's evidence, in the absence of some explanation by the defendant, justifies the presumption that it was due to the defendant's negligence or want of care.

pp. 310-311

In such a case the following prayer was approved:

> "The plaintiff prays the Court to rule as a matter of law that if the Court sitting as a jury find from the evidence that the servants or agents of the defendants, while moving or hoisting a heavy piece of structural iron, or column, by means of a derrick, and while acting within the scope of their employment, permitted the same to strike against a valve or pipe upon the plaintiff's premises with such force as to break the same, this will be *prima facie* evidence of negligence

on the part of the servants or agents of the defendant,
under the circumstances, while moving or hoisting said
piece of structural iron or column, and unless upon the
whole evidence such *prima facie* evidence is rebutted,
the verdict must be for the plaintiffs."          p. 311

A prayer is erroneous which is to the effect that the defendant
was to be found guilty of negligence if the Court sitting as
a jury should find that the tag line used by the defendant
in placing said column in position was not sufficient to con-
trol the swing of the column, and that the tag line parted by
reason of it being insufficient and caused the injury com-
plained of, where there is no evidence in the case that such
tag line was in any way defective.               p. 315

The mere fact that the tag line broke is not sufficient to show
that it was insufficient for the purpose for which it was pro-
vided.                                            p. 314

A prayer is erroneous which is based upon a finding of facts
as to which there is no evidence properly in the case.   p. 315

Where a presumption of negligence arises from the happen-
ing of an accident under the circumstances shown in the evi-
dence produced by the plaintiff, the burden of proof is cast
upon the defendant to show that the injury was not caused by
any want of care on his part.                    p. 311

Even though the plaintiffs were negligent in allowing the pipe
that was broken to remain where it was during the erection
of said addition to their building, such negligence should not
prevent the plaintiff from recovering when the evidence shows
that the defendant, by the use of reasonable care, might have
avoided the consequences of the plaintiff's negligence.

pp. 313-314

*Decided January 14th, 1913.*

Appeal from the Superior Court of Baltimore City
(DOBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Vernon Cook,* for the appellant.

*John Phillip Hill* (with *Arthur R. Padgett* and *Hill, Ross & Hill* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The appellees in the summer of 1911 conducted a department store on the corner of Howard and Lexington streets, in Baltimore City, and they employed Morrow Bros. to erect an addition to their store. Morrow Bros. contracted with the appellant company for the erection of the structural iron and steel work in the new building. The proposed improvement necessitated the tearing down of the north wall of the old building. Along this wall there was a four-inch iron pipe, which ran from the basement to the upper stories of the building to the height of about fifty feet, with which were connected a number of smaller pipes, the whole forming a sprinkler system designed as a protection against fire. After the north wall of the old building was torn down, the vertical pipe of the sprinkler system was supported by a prop in the basement and by its connection with the lateral pipes which branched off from it at each floor of the old building.

In the construction of the iron and steel work in the new building the appellant had to raise and place in a vertical position heavy iron columns. These columns were lifted and placed in position by means of a derrick on top of the adjoining building. From the derrick and boom ran a cable to which a block was attached, and when a column was to be moved the block was hooked to an iron chain fastened around one end of the column.

The evidence produced by the plaintiffs shows that one of these iron columns was lying on the fourth floor of the building, and that in order to place it in position it had to be lifted and carried across a space nineteen or twenty feet wide by means of the derrick; that in placing this column one end of it was lifted from the floor by means of the derrick, operated by the employees of the appellant, and that after it had been raised a certain height one of the employees of the appellant took a "pinch bar" and pried

the other end of the column off the floor, and the column swung across the open space and struck the vertical pipe of the sprinkler system with sufficient force to break it or one of its connections, in consequence of which the plaintiffs' store was flooded and their building and stock of goods were damaged. The plaintiff's evidence also tends to show that the sprinkler system was in good condition at the time of the accident, and that there was no guy line or tag line attached to the lower end of the column when it was pried off the floor by which the employees of the appellant could control or direct the swing of the column after it left the floor; that it is customary to use a guy line or tag line for that purpose, and that it would be dangerous to attempt to place a column in position under such circumstances without using a guy line, attached or fastened to the lower end of the column.

The defendant offered evidence to show that after one end of the column was lifted from the floor at an angle of about forty-five degrees, a guy line was fastened to the other end of the column, and that the man holding the guy line wrapped the other end around a window sill in order to make it easier to control the column after it left the floor; that this guy line was a one-inch manila rope, which had only been used a short time, and was in good condition, and that it was larger than the rope ordinarily used for that purpose; that after the lower end of the column, which weighed about 2500 pounds, was pried off the floor, the guy rope broke and the column swung across the open space and struck a girder and the pipe connected with the sprinkler system; that the method employed by the defendant in placing the column was the usual and customary one, and that it is usual to wrap the guy line around some object in order to better control the column, and to pry the lower end of the column off the floor in order that it may swing to the position in which it is to be placed; that the defendant could not account for the breaking of the rope, which was apparently in good condition, unless it was due to some secret or hidden defect in the

rope, which could not have been detected by an inspection. The defendant also offered evidence tending to show that after the wall of the old building was pulled down the pipes of the sprinkler system were left in an exposed position; that the defendant told the plaintiffs or their agents that it would be dangerous to erect the iron work in the new building with the pipes in that condition, and requested that they be removed; that the plaintiff had some of the pipes moved, but neglected to move the pipe that was broken, and that the defendant told the plaintiffs or their agent, that if it went ahead with the work it would be done at the risk of the plaintiffs, and that the defendant would not be responsible for any damage caused by injury to the pipes. There is also evidence in the case tending to show that there was no danger of injuring the pipes of the sprinkler system if proper care was exercised, and from which it could have been inferred that the breaking of the rope used as a tag line was due to the sudden dropping of the beam from the edge of the floor after it was pried off.

The case was tried before the Court below without a jury, and the trial resulted in a judgment in favor of the plaintiffs, from which this appeal was taken.

There are but three exceptions in the record, the first two being to the refusal of the Court to admit certain evidence offered by the defendant, and the third to the ruling of the Court on the prayers.

In the first two exceptions the defendant asked one of the plaintiffs if they had made any claim against the insurance company for damages, and the witness having replied that their claim was in the neighborhood of $5,000.00, he was then asked if the insurance company paid that amount, and if the plaintiffs didn't accept less than $5,000.00, and the Court, upon objection by the plaintiffs, refused to permit the questions to be answered. There was no error in these rulings. It is said in 38 *Cyc.* 537: "It will be no defense that the injured party has been indemnified by insurance, although he has collected all or a part of such indemnity,"

and in 13 *Cyc.* 70: "The rule seems to be well established by the authorities that the fact of insurance can not be set up in mitigation of damages, whether such reduction is set up in mitigation in case of fire, life, marine or accident insurance." In the case of *City Pass. Ry. Co.* v. *Baer,* 90 Md. 108, this Court said: "The sixth prayer asserts the correct proposition that any sick benefits received by the plaintiff from any source other than the defendant were not to be considered by the jury in making up their verdict."

At the conclusion of the testimony the Court below granted plaintiffs' fifth prayer, which is as follows: "Plaintiffs' pray the Court to rule as a matter of law that if the Court sitting as a jury find from the evidence that the servants or agents of the defendant, while moving or hoisting a heavy piece of structural iron or column by means of a derrick, and acting within the scope of their employment, permitted and allowed said piece of structural iron or column to strike against a valve or pipe upon plaintiffs' premises with such force as to break same, this will be *prima facie* evidence of negligence on the part of the servant or agents of the defendant under the circumstances while moving or hoisting said piece of structural iron or column, and unless upon the whole evidence, such *prima facie* evidence is rebutted, then the verdict must be for the plaintiffs." And the Court rejected defendant's first prayer which asserted that the plaintiffs had offered no evidence legally sufficient to show any negligence on the part of the defendant or its agents which caused or directly contributed to the accident mentioned in the declaration.

The negligence charged in the declaration is that the defendant, while erecting said building, and moving a heavy piece of structural iron, in the course of said work "wrongfully and negligently permitted the same to strike against and break a valve or pipe upon plaintiffs' said premises, connected with an automatic sprinkler system therein situated" thereby causing the damage complained of, and the question presented by these prayers is whether the striking and break-

ing of the pipe in question in the manner and under the circumstances disclosed in the evidence adduced by the plaintiffs gives rise to a presumption of negligence on the part of the defendant, in other words, does the case presented by the plaintiffs' evidence fall within the line of cases to which the doctrine of *res ipsa loquitur* applies?

In the case of *Howser* v. *C. & P. R. R. Co.,* 80 Md. 146, where the plaintiff while walking along a foot path which extended along the roadbed of the defendant, but not only its right of way, was struck by cross ties which fell from a passing train and was injured, the Court held that the circumstances under which the injury occurred justified a presumption of negligene as against the defendant. In the course of the opinion in that case the Court said: "Whilst the general rule undoubtedly is, the burden of proof that the injury resulted from negligence on the part of the defendant, is upon the plaintiff, yet in some cases, 'the very nature of the action may, of itself, and through the presumption it carries, supply the requisite proof.' *Wharton on Negligence,* par. 421.

Thus when the circumstances are, as in this case, of such a nature that it may be fairly inferred from them that the reasonable probability is that the action was occasioned by the failure of the appellee to exercise proper caution which it readily could and should have done; and in the absence of satisfactory explanation on the part of the appellee a presumption of negligence arises against it." In support of its conclusion the Court referred to many English cases and quoted the following statement in *Scott* v. *London Dock Co.,* 3 Hurl. & Colt. 596: "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or its servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." And among the American cases cited and relied upon by the

Court was the case of *Cummings* v. *The National Furnace Company*, 60 Wis. 603, where "the defendant company was engaged in unloading iron ore from a vessel by means of a crane to which was attached a bucket. Whilst so engaged the bucket tipped and threw its contents upon a seaman lawfully working upon the deck of the vessel," and where the Court said: "The accident itself was of such a character as raised a presumption of negligence either in the character of the machinery used or in the care with which it was handled, and as the jury found the fault was not with the machinery, it follows that it must have been in the handling, otherwise there is no rational cause shown for its happening."

*Howser's case* is cited with approval in the case of *W. U. Tel. Co.* v. *State, Etc.*, 82 Md. 293, where a child was injured by coming in contact with a telephone wire which hung from a pole controlled by the appellant, and where the Court, referring to the Telegraph Company and the Railroad Company, said: "It was their plain duty, not only to properly erect their plants, but to maintain them in such a condition as not to endanger the public. It follows from this, that if the property of the defendants was not in proper condition and by reason thereof Nelson was injured, these facts alone, in the absence of other evidence to show that the defect originated without the fault of the companies, afford a *prima facie* presumption of negligence." In the case of *Winkelmann & Brown Co.* v. *Colladay*, 88 Md. 78, the doctrine was held to apply where the plaintiff was injured by the unexplained falling of a dum waiter, and in the case of *Decola* v. *Cowan*, 102 Md. 551, and *Walter* v. *Baltimore Electric Co.*, 109 Md. 513, this Court again quotes with approval the statement of the Court in *Scott* v. *London Dock Co., supra*, which we have quoted above.

In the case at bar, the defendant was engaged in erecting the structural iron work in the addition to the plaintiffs' store, and the derrick and other appliances used in doing this work were under the management and control of the

defendant and its servants. The accident was such as in the ordinary course of things does not and should not happen if those who have charge of the work use proper care, and the happening of the accident in the manner and under the circumstances disclosed by the plaintiffs' evidence, in the absence of some explanation by the defendant, justifies the presumption that it was due to its negligence or want of due care.

The form of the prayer referred to is the one suggested in *Thomas on Prayers,* sec. 427, and follows the instruction approved in the case of *Island & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, where a steamboat in making a landing struck the wharf with such force as to tear up some of the planks or boards of the flooring and thereby injured the plaintiff, and where Mr. Justice Gray said: "As such damage to a wharf is not ordinarily done by a steamboat under control of her officers and carefully managed by them, evidence that such damage was done in this case was *prima facie,* and, if unexplained, sufficient evidence of negligence on their part, and the jury might properly be so instructed."

There was, therefore, no error in granting the plaintiffs' fifth prayer, and as the presumption of negligence arising from the happening of the accident under the circumstances shown in the evidence produced by the plaintiffs, cast the burden upon the defendant to show that the injury was not caused by any want of care on its part, the defendant's first prayer was properly refused.

The defendant relies upon the cases of *Benedict* v. *Potts,* 88 Md. 56; *South Balto. Car Works* v. *Schaefer,* 96 Md. 105, and *Schier* v. *Wehner,* 116 Md. 553. In *Benedict* v. *Potts* and in *Schier* v. *Wehner,* there was no evidence to show how the accident happened, and in the case of *South Balto. Car Works* the Court held that a presumption of negligence on the part of a master was not justified by the mere fact that an employee was injured by the breaking of a piece of machinery, where there was no evidence that defects

in it could have been discovered by inspection, or that due care had not been exercised in its selection. In the case last referred to JUDGE FOWLER said: "It has been held in a number of cases that the sudden breaking of machinery is not sufficient of itself, to warrant the Court in sending the case to a jury. Thus the mere fact of the breaking of a chain, *Brymer* v. *Southern Pacific Co.,* 90 Cal. 496; the unexplained bursting of emery wheel, *Simpson* v. *Pittsburg Locomotive Works,* 139 Pa. St. 245; the parting of a brake chain on a car, *Sack* v. *Dolese,* 137 Ill. 129; the bursting of a fly-wheel, *Piehl* v. *Albany Ry.,* 30 Appellate Division, N. Y. 169; the breaking of a car-wheel from some cause unknown, *Morrison* v. *Phillips,* 44 Wis. 410; the breaking of a derrick, *Duffy* v. *Upton,* 113 Mass. 547, were held not sufficient to justify an inference of presumption of negligence."

In considering the plaintiffs' fifth and the defendant's first prayers we are dealing with the evidence produced by the defendant. These prayers must be judged by the effect of the evidence produced by the plaintiffs, and as that evidence was such as to justify the presumption of negligence, it was incumbent upon defendant to rebut that presumption and it was for the jury, or the Court sitting as a jury, to weigh the evidence adduced by the defendant for that purpose. In the case of *Strasburger* v. *Vogel,* 103 Md. 85, JUDGE McSHERRY said: "If the plaintiff's case had rested exclusively upon an inference of negligence deduced from the single fact that the bricks fell without an apparent or assigned cause; and if the defendant had, by way of answer to that theory, relied upon the intervention of an independent agency, the instruction would have been correct, because the presumption of negligence arising from an unexplained falling of the bricks would have established a *prima facie* case which the defendant could only have rebutted by showing a state of facts which destroyed or negatived that presumption. Between the two conflicting theories it would have been the province of the jury to pass."

The appellant also contends that as the evidence offered by the defendant shows that the accident was caused by the breaking of the guy or tag line, defendant's fourth prayer, in which the Court ruled as a matter of law that the mere unexplained breaking of the rope or tag line mentioned in the evidence was not in itself sufficient to justify an inference of negligence on the part of the defendant or its employees, is not consistent with the plaintiffs' fifth prayer. But while, under the authority of the case of the *South Balto. Car Works* v. *Schaefer, Supra,* the mere breaking of a tag line was not of itself sufficient to justify a presumption of negligence on the part of the defendant, the circumstances under which the accident happened as disclosed by the evidence produced by the plaintiffs, unexplained by the defendant, were sufficient to warrant that presumption, and, therefore, the prayers referred to are not contradictory.

The defendant's second prayer asserts the proposition that the plaintiffs were not entitled to recover because the uncontradicted evidence shows that they were guilty of negligence which directly contributed to the accident. This prayer was based on the evidence produced by the defendant that the pipe in question was in a dangerous position, and that the plaintiffs refused to comply with the request of the defendant to have it removed. The contract of the plaintiffs with Morrow Bros., who contracted to erect the addition to the plaintiffs' store, was not offered in evidence and is not in the record, and it is, therefore, impossible to determine whose duty it was to remove the pipe, assuming that it should have been removed. But apart from that fact, there was evidence tending to show that there was no danger of injuring the pipe provided proper care was used. Under such circumstances the prayer was properly refused.

The plaintiff's eighth prayer contained the instruction that even if the plaintiffs were negligent in allowing the pipe that was broken to remain where it was during the erection of said building, that negligence would not prevent the plaintiff from recovering if the evidence shows that

the defendant might, by the exercise of reasonable care, have avoided the consequences of the plaintiffs' negligence. We see no objection to this prayer. It was the plain duty of the defendant, notwithstanding the plaintiffs allowed the pipe to remain where it was, to use reasonable care, and if by the exercise of such care the accident could have been avoided, the plaintiffs were entitled to recover for any injury resulting from failure to use such care.

It follows from what we have said in regard to plaintiffs' fifth prayer that the defendant's special exceptions to the plaintiffs' eighth prayer, on the ground that there was no evidence to show that the defendant had failed to exercise reasonable care, was properly overruled. .

The objection to plaintiffs' ninth prayer, which relates to the measure of damages, was not pressed in this Court, and the prayer appears to have been approved in the case of *North. Cent. R. R. Co.* v. *O'Connor,* 76 Md. 207. The plaintiffs' sixth and seventh prayers are to the effect that if the Court sitting as a jury found that the tag line used by the defendant in placing said column in position was not *sufficient* to control the swing of the column, and that the tag line parted by reason of it being insufficient and caused the injury complained of the defendant was guilty of negligence. These prayers were specifically excepted to on the ground that there was no evidence to show that the tag line mentioned was insufficient. All of the evidence bearing upon this question tends to show that the line or rope was comparatively new, and that it had been used as a tag line in placing the columns on the first and second stories of the building, which were heavier than the column which caused the injury; that it was a one-inch manila rope and sufficient to sustain a weight of over 5,000 pounds; that it was a larger rope than is ordinarily used as a tag line in placing columns on the size referred to in this case; that it was apparently in good condition, and that there was no reason to suppose that there was any defect in it. One of the defendant's witnesses testified that he inspected the rope care-

fully before it was used and that there was no defect in it. There was no evidence offered that the rope was worn, defective or of not sufficient strength or size for the purpose for which it was used. In the absence of some evidence to show that the rope was defective, or that it was smaller than a rope ordinarily used as a tag line in lifting and placing columns of the size and weight of the one mentioned in evidence, we think there was error in granting the sixth and seventh prayers of the plaintiffs, and that the defendant's special exception to those prayers on the grounds stated should have been sustained. The mere fact that the tag line broke under the circumstances mentioned in the evidence is not alone sufficient to show that it was insufficient for the purpose for which it was used. Under all the evidence in the case, the Court sitting as a jury might have concluded that the breaking of the tag line was due to the fact that it was wrapped around a window sill and to the sudden jerk or fall of the column after it was pried off the floor, but there is no evidence in the case to justify a finding that the tag line was insufficient, and that the defendant was therefore guilty of negligence. The case of *South Balto. Car Works* v. *Schaefer, Supra,* and the cases therein cited hold that the sudden breaking of machinery, or the parting of a brake-chain on a car is not in itself sufficient to justify the presumption of negligence.

Because of the error in granting the plaintiffs' sixth and seventh prayers, the judgment must be reversed and the case remanded for a new trial.

> *Judgment reversed, with costs, and case remanded for a new trial.*