## BLUMENFELD ICE & COAL COMPANY v. MRS. JOHN H. ALDINGER.

Western Section. September 27, 1925.

Certiorari denied by Supreme Court March 13, 1926.

1. **Appeal and error. Where court by consent of counsel made an order overruling motion for new trial defendant is entitled to an appeal.**
   Where the rules of the circuit court provided that motion would be heard only on Saturday and further provided that motion for new trial must be presented to the court within fifteen days after judgment and motion was filed on the 13th day and counsel asked to be heard on Tuesday, the 14th day, no Saturday intervening, and trial judge refused to hear motion on merits but by agreement entered an order overruling the motion, held party entitled to an appeal.

2. **Master and servant. Master not liable for negligence of servant while using truck beyond scope of master's business.**
   In an action for damages caused by collision with defendant's truck where evidence showed driver had taken a load of coal to his own home and had permission to keep truck at his home until next day and servant was driving the truck on his own business when accident happened, held master not liable for servant's negligence.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Reversed and dismissed.

Royden Dixon and E. G. Cross, of Memphis, for plaintiff in error.
W. F. Murrah, of Memphis, for defendant in error.

HEISKELL, J.   This is a suit by Mrs. John H. Aldinger against the Blumenfeld Ice & Coal Co., to recover damages for injury to an automobile owned by plaintiff, caused by a collision with a truck belonging to the defendant, due to the negligence of the driver of the truck.   There was a trial before a jury and a verdict for plaintiff for $450, from which the defendant has appealed and assigned errors.

The case grew out of an automobile collision which occurred at the intersection of Poplar avenue and Lauderdale street, in Memphis, Tennessee, on the night of February 17, 1923.   The plaintiff and her husband were in plaintiff's automobile, driving east on Poplar avenue, plaintiff's husband driving.   The defendant's truck, in charge of an employee, was being driven west on Poplar avenue, and in attempting to turn south into Lauderdale street there was a collision between the two cars.   Plaintiff brought suit and an ancillary attachment was issued and levied upon defendant's truck for the purpose of fixing a lien on the same to satisfy any judgment which might be rendered in favor of the plaintiff.

The defendant filed pleas of not guilty and of contributory negligence and also filed a plea, in abatement to the attachment; the case was tried before a jury and a judgment rendered against the defendant and in favor of plaintiff for $450, and the attachment sustained.

At the conclusion of the proof defendant made a motion for a directed verdict on the ground that the proof showed that the driver of the truck was not about his master's business, which motion was overruled.

The defendant has grouped its assignments of error and treated them in its brief under three general headings: (1) That the verdict is excessive; (2) that the driver of the automobile was not on his master's business at the time of the accident; (3) the verdict of the jury did not have the approval of the trial court.

We prefer to consider these propositions in reverse order, taking up first the question that the verdict of the jury did not have the approval of the trial court.   This question involves the consideration of certain rules of the circuit court in regard to motions for new trials.   These rules, so far as material to this case, after providing for a motion docket are as follows:

"The entry of a motion shall give the number of case, date of entry, and the nature of grounds thereof, the motion docket shall be called on every Saturday of the term and motions will not be heard on any other day, unless in special cases when the

court shall determine that such hearing is necessary to prevent serious injury, any motion on such motion docket which shall have been called for three successive Saturdays shall either be acted upon by the court upon the record in the cause or else shall be stricken from the docket.''

''All motions for a new trial must be presented to the court for its action within fifteen days after the entry of the judgment of the court or the verdict of a jury therein and all bills of exception must be completed and filed with the clerk within thirty days after the entry of the final judgment in such cause, provided that in case of sickness or absence of the court or the unavoidable absence of counsel the time for presenting such motion for new trial may be extended not to exceed thirty days from the date of judgment.''

This case was begun and ended on Tuesday, the 24th day of April, 1924. The motion for new trial was filed on Monday, the 5th day of May, 1924, which was the thirteenth day after the verdict of the jury. No Saturday intervened between the day of filing and the 15th day after the verdict of the jury and, therefore, the trial judge was asked to hear argument on the motion for a new trial or to allow it to be submitted on Tuesday, the 6th day of May, 1924, on the fourteenth day after the verdict of the jury. He refused to hear argument on the motion for a new trial or to allow it to be submitted or take any action of any kind except that at his suggestion he would overrule the motion for a new trial upon agreement of counsel for the defendant, who filed the motion, and who was asking him to consider it, or to take it under advisement. Counsel thereupon stated he had no recourse in view of the attitude of the trial judge except to act under his suggestion, which agreement counsel made upon the statement of the judge that he would act on the matter in no other way and would not take the motion under advisement. Whereupon, the following order was entered:

''Came the defendant and moved the court to pass upon its motion for a new trial in this case, this not being a motion day of the court, but Saturday being the regular motion day the court declined to do it. Whereupon counsel for defendant agreed that the judge might enter an order overruling the motion without having examined or considered the same, which agreement counsel for defendant made upon statement of the judge he would act on the matter in no other way, and would not take the motion under advisement.

''In view of that agreement the judge overruled the motion for new trial, to which action of the court in declining to consider defendant's motion and in overruling its motion, defendant then and there duly excepted and prayed an appeal in

the nature of a writ of error to the next term of the Court of· Civil Appeals for the District, which appeal in the nature of writ of error is granted upon defendant making bond as required by law.''

Upon this record it is contended for the appellant that the circuit judge did not approve the verdict, and for the appellee that the defendant is without a motion for a new trial and therefore its appeal must be dismissed.

The rules are perhaps not as definite as they should be. The trial judge construed the rules to mean that the motion for a new trial must be entered in time to be called on Saturday within fifteen days after the entry of the judgment. This may require the entry of the motion within nine days. We are not prepared to say that this is not a legitimate construction of the rules and, therefore, it was within the discretion of the court to hear the motion or not. On the other hand, when by consent of counsel for the defendant a pro forma order went down, overruling the motion, we do not think this can be taken as depriving the defendant of its right to appeal for lack of a motion for a new trial.

The next question is, was the driver of the truck, at the time of the accident, using the truck in the course of his employment, or of his master's business?

The facts disclosed by the record, bearing on this question, are as follows: On February 17, 1923, Charley Boyd, the driver of the truck, who had been employed in this ·capacity by the defendant for some months, wanted a load of coal delivered at his home on Piomingo street. It was Saturday, about six o'clock, time to close the coal yard, all the other trucks were in, and the Manager Levine told Boyd to wait until morning to get his coal, but Charley said it was cold and he needed the coal tonight. Levine then said to him, ''take the load of coal to your home and keep the truck there until morning and then bring it back; I am going to close the yard now, but will be here all day tomorrow and have the yard open.'' Boyd left with the load of coal about 6:15 and Levine at once closed the yard and went home. Boyd was purchasing the coal for himself and delivered it to his own home in the same way as to any other customer. Some time after delivering the load of coal to his home, Boyd says he was afraid to keep the truck for fear some one would steal parts of it, and concluded to take it back to the yard. He drove the empty truck to corner of Main and Jefferson to a shoe store and bought himself a pair of shoes; then drove to the coal yard on High street, in North Memphis; found the yard closed and was on his way back home when the collision occurred. Asked as to the time of the accident, he says, ''I don't know, I had no watch. If I know it was between seven and eight.'' J. H. Aldinger and Mrs. Aldinger both say it was about ten o'clock, may be

a little before ten. Levine says about two hours after he got home he received notice of the accident by 'phone. The policeman Strickland, who arrested Charley Boyd, at the scene of the accident, says he was drunk. Charley says he had not had anything to drink.

We think it is clear that this accident happened between nine and ten o'clock at night, that the driver was intoxicated, and that his story about taking the truck back to the yard is an afterthought, after the accident. Perhaps, however, it may be justly said there is evidence to support a different conclusion. Let us see how far this is true. It would be a high attenuation of evidence to support the finding that the accident occurred as early as between seven and eight, based upon the evidence of the driver that he did not know, but if he did know, it was that time, as against the positive testimony of the plaintiff and her husband and Levine. However, let it go at that, and fix the time between seven and eight. Then take the driver's word for it, that he had had nothing to drink and that he did just what he says he did, drove the empty truck to corner of Main and Jefferson, bought a pair of shoes, then went to the coal yard, found it locked, and was on his way home. This trims the evidence to the very lowest terms in favor of the plaintiff, and removes all conflicting evidence, all of which is against the plaintiff, and we think it shows clearly that the driver of the truck, at the time of the accident, was not acting within the scope of his employment.

The rule is laid down in Core v. Resha, 140 Tenn., at page 412:

"'It is undoubtedly true, as a general proposition of law, that the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong at the time and in respect of the very transaction out of which the injury arose, and the mere fact that the driver of the automobile was the defendant's servant will not make the defendant liable. It must be further shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment.'

"This is in line with the overwhelming weight of authority in this country, which is to the effect that, if a chauffeur uses a car wholly in a service not the owner's, either with or without the owner's permission, the latter is not liable to one injured by reason of a negligent operation of the car, for the reason that he is not, in such use, acting within the scope of employment in the owner's business. These authorities are collected in the following cases and notes: Symington v. Sipes, 121 Md., 313, 88 Atl., 134, 47 L. R. A. (N. S.), 662, and note; Neilley v.

Connable, 214 N. Y., 586, 108 N. E., 853, L. R. A., 1916A, 954, note, Ann. Cas., 1916A, 656; Ann. Cas., 1917D, 1001, and notes, in addition to those cited in Goodman v. Wilson, supra.''

Eliminating, therefore, all proof as to which there is any conflict and stating the evidence in the strongest possible terms to support the contention of the plaintiff, she has not shown that at the time of the accident the driver was on the master's business and acting within the scope of his employment.

The driver had authority to drive the truck home and keep it there until the next morning. If he had done that this accident would not have happened. The driver had no right to do anything with the truck after unloading it, except to return it to the coal yard the next morning; any other use of it was not in his master's business and was not within the scope of his employment.

If we might consider the whole proof on this point that the accident occurred between nine and ten o'clock, after the driver had had time to get drunk, at a time when it would be preposterous for him to suppose he would find the coal yard open, the conclusion is plain that the driver was using the car for his own purposes and without permission. But if we cut the proof down to where it presents the strongest view to support the contention of the plaintiff, and this is all the jury could do, still plaintiff has failed to show that the driver of the truck was acting in his master's business, or in the scope of his employment.

This view of the case makes it immaterial to pass on the question of whether or not the verdict is excessive. Therefore assignments to this effect are not considered. All assignments raising the question that the driver of the truck was not acting within the scope of his employment, nor in his master's business, are sustained. All other assignments are overruled. It follows that the motion for a directed verdict should have been sustained, and the case is reversed and dismissed.

Owen and Senter, JJ., concur.